Rockingham,
No. 5944.

PHILIP S. HOLLMAN, A*dm'r.*

*v.*

EXETER BANKING COMPANY.

June 2, 1970.

*Porter & Hollman* ( *Mr. Philip S. Hollman* orally ), pro se, for the plaintiff.

*Scammon, Gage & Whitman* ( *Mr. Robert G. Whitman* orally ), for the defendant.

DUNCAN, J.  This is an action of assumpsit brought on behalf of the estate of a surviving joint tenant to recover the proceeds of a savings account with the defendant bank. Trial by the Superior Court ( *Morris, J.* ) resulted in a verdict for the plaintiff in the sum of $ 10,469.19. Exceptions of both parties to findings and rulings by the presiding justice were reserved and transferred.

The account in question stood in the names of David Elias of Epping, and of his brother, Malhem Elias of Rachaya-el-Fokhar, Lebanon, on the death of David on August 6, 1956. The account was payable to either or the survivor, and showed a balance of $ 8,201.97 at the time of David's death. David was survived by a widow, and his brother Malhem. Malhem died intestate on March 24, 1963, and the plaintiff was appointed administrator of his estate on March 28, 1967. It is not disputed that at David's death the account belonged to Malhem. RSA 384:28-31.

Between August 6, 1956 and April 17, 1961 all but $ 27.95 was withdrawn from the account by the administrator of David's estate, Chavig Mallouf, a cousin of the Eliases. Eighteen hundred dollars was used by Mallouf to pay the funeral expenses of David's estate, and $ 697.17 to pay the state legacy and succession tax. *See* RSA 86:8 ( supp ). There was evidence that the balance of moneys withdrawn from the savings account by Mallouf was forwarded to Malhem in Lebanon by means of a series of checks in small amounts to Malhem's order issued by the commercial department of the defendant bank. The bank's record of the savings

account bore entries indicating that Mallouf was appointed administrator of David's estate on January 21, 1957. *See* RSA 384:1-a (supp).

The trial court made the following findings: "On all the evidence, the Court finds that it is more probable than otherwise that at the time of his decease intestate, David Elias left real property and other personal property in which the plaintiff's intestate, Malhem Elias, had an interest. The Court further finds that it is more probable than otherwise that the defendant treated the bank account Number 31463 as the property of Chavig Mallouf, administrator of the estate of David Elias, after January 21, 1957, and that the funds in the deposit account, excepting the inheritance taxes paid in the sum of $697.17, were paid out by the bank to Chavig Mallouf, administrator of the estate of David Elias. The Court further finds that $1800.00 of the funds was used by Chavig Mallouf, administrator, to pay expenses of administration of the estate of David Elias and that the balance of the proceeds of said savings deposits were sent to Malhem Elias by Chavig Mallouf."

In response to requests by the plaintiff the court also found: "12. The defendant did not in any way at any time obtain or seek to obtain approval from Malhem Elias for the withdrawals made from said account. Nor did the defendant have any authorization in its files permitting said withdrawals to be made." "13. By permitting withdrawals to be made from said account without authorization from Malhem Elias, the defendant breached its duty to its depositor, Malhem Elias . . . ." "30. There is no evidence in this case that Malhem Elias accepted any alleged payments as a discharge or extinguishment of the indebtedness of the defendant on account of said savings account." "31. The plaintiff is entitled to recover from the defendant the sum of $7,573.36 ($7,601.31 less $27.95 turned over to Camille Elias, son of Malhem Elias, on September 23, 1965), plus accrued interest on said amount from January 1, 1957 to January 11, 1967 (in accordance with applicable interest rates paid by the defendant during said period on ordinary savings accounts), plus interest at 6% from January 12, 1967, plus costs."

We are satisfied that the findings, rulings and verdict were warranted by the evidence. Payment of the proceeds of the account by Mallouf to Malhem Elias would operate to satisfy the indebtedness of the defendant bank to Malhem only if received

by Malhem with an intention to accept them in payment of the account. *Berndt* v. *Hoboken Bank,* 103 N.J.L. 478, 135 A. 818. *See* 70 C.J.S. Payment *s.* 3, *p.* 213. There was evidence from which it could be found that Malhem was aware that his brother owned income producing property, and that Malhem received the payments sent him by Mallouf on the supposition that they represented payments on account of his interest in the estate, and not as withdrawals from his own bank account. Typical of letters from Malhem to Mallouf was one under date of July 25, 1959, in Arabic, which concluded: "Before my brother died he wrote me and sent me three papers and said he deposited for me money in three banks. Please tell me about them and give me the name of the banks."

The bank was obligated to pay the proceeds of the account to its depositor, Malhem. *Holden* v. *Bank,* 77 N.H. 535, 538, 93 A. 1040, 1042. It could be found from the evidence that the bank voluntarily paid the proceeds to a stranger to the account, without authorization from the depositor. *Savings Bank* v. *Church,* 69 N.H. 582, 44 A. 105.

The burden was upon the bank to establish not only that its payments reached the depositor, but that they were received by him on account of the bank's indebtedness. *Smith* v. *Steam Mill,* 66 N.H. 613, 34 A. 153; *Kendall* v. *Brownson,* 47 N.H. 186. Whether the funds were so accepted by Malhem was a question of fact for the trial court. *Exeter Cooperative Bank* v. *Clark,* 109 N.H. 503, 256 A.2d 653.

The defendant asserts that the trial court erred in finding it to be more probable than otherwise that Malhem had an interest in real and personal property of his brother's estate, because Mallouf's final account as administrator of David's estate "shows Malhem's distributive share of David's estate as $ 200."

The final account was received in evidence for the "limited purpose of showing that the account as filed and accepted contains an entry of Two Thousand Dollars advanced for Malhem Elias from the savings account." Examination of the account which shows allowance by the probate court on May 10, 1965, discloses nothing which purports to expressly determine "Malhem's distributive share."

The account does show an item, designated "Schedule L": "Cash advanced by Malhem Elias $ 2000." This may be thought to correspond with a withdrawal in like amount from the joint

savings account under date of February 4, 1957. Mallouf testified that $200 of this amount was forwarded to Malhem, and his account shows under "Schedule 7, Paid to Mary Elias widow," a single item: "Paid on legacy 2-4-57 Bank draft to Lebanon-Melham Elias $200.00."

Additionally the exhibit, which leaves much to be desired as an example of proper and intelligible probate accounting, shows that the accountant charged himself in Schedule B with "Cash collected from savings institutions $12,352.97" including "Exeter Banking $8201.97"; and discharged himself in Schedule 14 with savings accounts totalling $7851.97, including "Exeter Banking, Exeter (joint with Melham) $6201.97" (or $2000 less than the amount specified in Scheduled B), from which the accountant then deducted another $2000: "Less $2000.00 adv. under Schedule L $2000"; resulting in a balance for Schedule 14 of $7851.97. As of the date the account was allowed, the savings account showed a balance of $27.41, and the balance never exceeded $5607.31 after March 18, 1957.

The only other use made of the final account at the trial was for the limited purpose on cross-examination of impeaching the testimony of the witness Mallouf that he had always considered the savings account in question to be the property of Malhem, by directing his attention to Schedule B of the final account, showing the bank account as an asset of David's estate.

The final account of Mallouf as administrator of David's estate thus cannot be relied upon to establish error in the findings of the trial court. The findings made were warranted by testimony which indicated that Mallouf received rents from various properties of the estate, some of which were being purchased under agreements with the decedent for the application of rents against the purchase prices; and that Mallouf had told an attorney representing Malhem's family that the money which he sent to Malhem came from the sale of properties in David's estate.

The defendant's suggestion that the estate of Malhem Elias of which the plaintiff is administrator has been unjustly enriched (*Redington Hub Co.* v. *Putnam,* 76 N.H. 336, 82 A.715) is not supported by the record. If unjust enrichment resulted from the bank's conduct, it was the estate of David Elias which benefited from the funds erroneously paid to it and applied against its obligations. No claim by the bank against the estate of David Elias is presented by the action before us. *See Savings Bank* v. *Church,* 69 N.H. 582, *supra.*

Since there was no error of law and the findings and rulings of the trial court could reasonably be made upon the evidence, they are binding in this court. *Bennett* v. *Smith,* 85 N.H. 478, 482, 160 A. 478, 480; *Fortino* v. *Timko,* 110 N.H. 200, 263 A.2d 663. It follows that the order is

*Judgment on the verdict.*

All concurred.